*A. C. Downey,* for the appellants.

*J. E. McDonald* and *A. L. Roache,* for the appellee.

---

## Mansur *v.* Bradley.

PRACTICE—MODE OF EXAMINING WITNESS.—Where a witness is allowed by the Court to read his testimony in chief to the jury, from a previously written narrative, without interrogations, over the objection of the adverse party, and the witness is then subjected to a full cross examination by the adverse party, and re-examination by the party producing him, in the usual manner, this Court will not

Mansur *v.* Bradley.

reverse the judgment below on account thereof, unless it appear that the complaining party was injured thereby, but, the evidence not being in the record, will presume in favor of the lower tribunal.

PRACTICE IN SUPREME COURT.—As to points of practice in this Court, see the latter part of this opinion.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—*Mansur & Co.,* sued *Bradley* for about 5,000 dollars. The complaint was filed against *Bradley & Woolley,* but, *Woolley* not being found, was prosecuted against *Bradley.*

The complaint was composed of three paragraphs:

1. Against *Bradley & Woolley,* as late partners, doing business as bankers, for 5,000 dollars, money lent.

2. Against the same as partners in the business of bankers and brokers, under the name of the Bank of the Capitol, and avers that on the 14th of *September,* 1857, said defendants procured the plaintiffs to deposit, upon a loan with them, the further sum of 4,872 dollars and 85 cents, and deliver to the plaintiffs their certificate, called a certificate of deposit, and set out the certiffcate *in haec verba:* "*Mansur, Ferguson & Co.* have deposited in this bank, 4,872 dollars and 85 cents, &c., signed by defendants by the name of *John Woolley,* cashier, by means whereof," &c.

3. Plaintiffs, at the request of defendants, deposited with them, as bankers and brokers, on &c., 4,872 dollars and 85 cents, to be safely kept by them and returned upon request. Yet defendants have failed to pay on request, &c., and have converted the same to their own use, and unlawfully assigned it to others, &c., wherefore, &c.

*Bradley* answered:

1. General denial.

2. That plaintiffs deposited with *Woolley,* in the Bank of the Capitol, (one of the free banks under the act of 1852,) and afterwards, on the 15th of *September,* 1857, took from said bank said certificate, &c., said *Woolley* being the cashier,

&c., and said plaintiffs so understood it to be the certificate of the bank, and that no part of the money ever came to the hands of *Bradley;* and that he had no interest in, or connection with said establishment, except as an employee, and as president of said incorporated bank, for a short time, at a salary; and that all his connection with said bank had terminated before said deposit.

3. That *Andrew Wilson* and *Woolley* organized the Bank of the Capital in 1854, under the general law of 1852, which proceeded to do a general banking business until *September* 16, 1857; that said plaintiffs, during all that time, transacted with said incorporated bank a large amount of business; as purchasing drafts, depositing money, &c., and checking it out from time to time; that said defendant was president of the bank for a short time, on a salary, and had no other connection with *Woolley;* that he had no share in losses or profits; and all his connection ceased before plaintiffs' deposit was made; that said deposit was made with said *Woolley,* in said free bank, and not with the defendant and *Woolley,* as alleged, and that no part of it ever came to the hands of *Bradley.*

4. Other paragraphs.

The other paragraphs are substantially the same—all deny any partnership with *Woolley,* and aver that all that *Bradley* ever did was as a mere employee on a stipulated salary, discharging, as his duties, what would have been the duties of a president, without any interest whatever in the profits and without any liability for the losses, and denying that any of the plaintiffs' money was ever left with, or came to the hands of the defendant, *Bradley,* but was left with *Woolley.*

To the several answers, the plaintiffs reply—1st. By a general denial; and, 2d. That the incorporated Bank of the Capitol did not, before the 1st of *March,* 1857, comply with the provisions of the act of 1855, and so said bank ceased to have any existence.

Mansur *v.* Bradley.

The cause was tried by a jury, who found for the defendant. The plaintiffs moved for a new trial on the grounds:

1. The Court erred in permitting *Bradley* to read his testimoney from the paper prepared by him in recitative form, without interrogatories.

2. The Court erred in giving certain designated charges.

3. The Court erred in refusing certain designated charges, which it was asked to give.

The motion for a new trial was overruled, and there was final judgment for the defendant.

As to the alleged error of the Court, assigned as the first ground for a new trial, the record states the facts, thus:

"Upon the trial of the cause, *John H. Bradley*, the defendant, was called as a witness, on his own behalf, and produced a paper, stating that he had, at the request of counsel in the case, and to save time, committed his testimony to writing, upon the paper produced, and could read the same to the jury, if so permitted, to which the plaintiff, at the time, objected and excepted, but the Court overruled the objection, and permitted said *Bradley* to read, at length, his testimony, in the form of a narrative, without interrogations being put until after the entire paper was read; a full cross examination and further re-examination of the witness was permitted after he had read the paper."

There are two reasons, at least, why we can not reverse the judgment in the case for this action of the Court below:

1. It is not shown that the plaintiffs, the complaining party, were injured by it.

2. We have a right to infer, in favor of the action of the Court below, that the plaintiffs' counsel, as well as the defendant's, knowing that *Bradley* was to be a witness, had agreed that he should write out his testimony, and thus estopped themselves to object simply on the ground that it was so written, no improper or irrelevant matter being contained

in the writing.   Neither the written, nor oral testimony, given by *Bradley*, is in the record.   We know nothing of its character, and a mere irregularity in the manner of presenting the testimony of a witness, even if not waived below, would not be ground for reversal of a cause where it could have worked no injury.   In this case, no objection was made below to any part of the evidence of *Bradley*, nor is there any made here; the Court below was satisfied no injury had been done, and no data are furnished us whereby we can say that any did happen.   In such cases, all presumptions are in favor of the action of the tribunal that tried the cause.

We now proceed to the alleged errors in giving and refusing instructions.

The plaintiffs sought to maintain their action on two theories:

1. That *Bradley* was a partner of *Woolley*.

2. That both of these men held themselves out as officers and agents of an existing bank, when the bank was extinct, whereby, it is claimed, they became liable as principals.

We will permit counsel to here state their points for themselves.   We quote from their brief:

"The appellants excepted to instructions given by the Court to the jury, upon its own motion, No.'s 1, 2, 7, 8.   The Court refused to give instructions No.'s 1, 3, 4, 5 and 6, as asked for by the appellants, and gave No. 3 in a modified form, to which the appellants also excepted.   And the Court gave, in a modified form, an instruction asked for by the appellee, to which the appellants also objected and excepted.   These instructions are based upon *Bradley's* supposed liability as a partner in one case, and upon his supposed liability as a pretended agent of a pretended bank, he acting without a principal.   As to the question of a partnership, we do not claim that we have any grounds to complain, but as to the liability

of a pretended agent, acting without a responsible principal, we have no doubt the Court mistook the law.

Perhaps this appears most plainly in the modified charge, found upon page 50 of the record, in that, the Court says that "if the money was actually left with *Woolley*, there is no question that he is liable, and if *Bradley* was not then in partnership with *Woolley*, he is not liable, &c.,—the latter part of this instruction does not change this part of it. Here the Court charges the jury directly that *Bradley* is not liable at all, unless he was a partner with *Woolley*. This, of course, precludes any recovery upon the liability of *Bradley* as a pretended agent, acting without authority and without any responsible principal. It virtually shuts out that part of the case. There is no attempt, in this charge, to confine it to a case of partnership only, but it goes to the whole action."

As counsel admit that there was no error in the giving or refusing instructions as applicable to the evidence, so far as it related to the hypothesis of partnership, we shall confine what we have to say, to the other hypothesis, namely, that the defendants were pretended agents of an extinct bank. See, as to liability of pretended agents, Dun. Pal. Ag. 374; Story on Ag., secs. 264, 265; 2 Kent 629; 7 Cush. Rep. 188; *Mc-Henry* v. *Duffield*, 7 Blackf. 41.

In *Wilson* v. *Tesson*, 12 Ind. 285, it was decided that the Bank of the Capitol, as one of the free banks of the State, could not, after the coming into force of the act of 1855, do a general banking business, it not having complied with that law; but by that law, it had two years in which to wind up, during which its officers might remain discharging the business incident to such winding up; and as the evidence is not in the record, we can not say that there was any evidence tending to show that any representation was ever made or countenanced by *Bradley*, that the bank was in existence for any other purpose, or was assuming to act for any other pur-

pose, than that of winding up; or that *Bradley* remained in the bank beyond said two years. Hence, we can not say that any instructions, touching such representations, would have been relevant, and, consequently, can not say they should have been given. And as the bank was in existence, and officered during two years, from 1855, for winding up simply, under a general law of which every body was bound to take notice, if *Woolley*, the cashier, of his own volition and on his own authority, simply made contracts outside of the power of the bank, he alone is responsible on those contracts, nothing being shown to indicate participation in them by others. See *Wilson* v. *Tesson, supra.*

We can not say, therefore, that the Court ought to have instructed the jury upon the hypothesis that *Bradley* was holding himself out as an agent of a bank having general banking powers.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Barbour & Howland*, for the appellants.

*John L. Ketchum*, for the appellees.